UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.	CASE NO. 6:24-cr-91-WWB-UAM

JONATHAN CARRILLO

### NOTICE OF MAXIMUM PENALTIES, ELEMENTS OF OFFENSE, PERSONALIZATION OF ELEMENTS AND FACTUAL BASIS

The United States of America, by Gregory W. Kehoe, United States Attorney for the Middle District of Florida, hereby files this Notice of Maximum Penalties, Elements of Offense, Personalization of Elements and Factual Basis, stating as follows:

### ESSENTIAL ELEMENTS

The essential elements of Count One of the Superseding Indictment, conspiracy to defraud the Internal Revenue Service, in violation of 18 U.S.C. § 371, are as follows in accordance with Eleventh Circuit Pattern Jury Instruction O13.1 (2024):

First: two or more people in some way agreed to try to accomplish a shared and unlawful plan;

Second: the defendant knew the unlawful purpose of the plan and willfully joined in it;

Third: during the conspiracy, one of the conspirators knowingly engaged in at least one overt act described in the Superseding Indictment; and

| | |
|---|---|
| Fourth: | the overt act was knowingly committed at or about the time alleged and with the purpose of carrying out or accomplishing some object of the conspiracy. |

The essential elements of Counts Two through Four of the Superseding Indictment, f aiding in the preparation and presentation of false tax returns, in violation of 26 U.S.C. § 7206(2), are as follows in accordance with Eleventh Circuit Pattern Jury Instruction O109.2 (2024):

| | |
|---|---|
| First: | That Defendant aided in, assisted in, procured, counseled, or advised on the preparation or presentation of a return arising under or in connection with any matter arising under the Internal Revenue laws; |
| Second: | the return falsely stated the material matters asserted in the indictment during the tax year identified in the Superseding Indictment; |
| Third: | that Defendant knew that the same in the return was false; |
| Fourth: | the false statement was material; and |
| Fifth: | that Defendant did so with the intent to do something that Defendant knew the law forbids. |

## **PENALTY**

The penalties for the offense charged in Count One of the Superseding Indictment are a maximum sentence of five years' imprisonment, *see* 18 U.S.C. § 371; a fine of $250,000, or twice the gross gain caused by the offense, or twice the gross loss caused by the offense, whichever is greater, *see* 18 U.S.C. §§ 3571(b)(3) and 3571(d); a term of supervised release of not more than three years, *see* 18 U.S.C. §§ 3559(a)(4) and 3583(b)(2); and a special assessment of $100, *see* 18 U.S.C.

§ 3013(a)(2)(A).

The penalties for the offenses charged in Counts Two through Four of the Superseding Indictment are a maximum sentence of three years' imprisonment, *see* 26 U.S.C. § 7206(2); a fine of $250,000, or twice the gross gain caused by the offense, or twice the gross loss caused by the offense, whichever is greater, *see* 18 U.S.C. §§ 3571(b)(3) and 3571(d); a term of supervised release of not more than one year, *see* 18 U.S.C. §§ 3559(a)(6) and 3583(b)(3); and a special assessment of $100, *see* 18 U.S.C. § 3013(a)(2)(A).

Additionally, the defendant must pay restitution to the Internal Revenue Service pursuant to 18 U.S.C. § 3663A.

## PERSONALIZATION OF ELEMENTS

As to Count One:

1. Do you admit that in the Middle District of Florida, from at least in or about August 2016 and continuing through at least in or about August 2020, you and at least one other person in some way agreed to try to accomplish a shared and unlawful plan?

2. Do you admit that you knew the unlawful purpose of the plan and willfully joined in it?

3. Do you admit that during the conspiracy, you knowingly engaged in at least one of the overt acts described in the Indictment?

    4.    Do you admit that the overt act was knowingly committed at or about the time alleged and with the purpose of carrying out or accomplishing some object of the conspiracy?

<u>As to Count Two</u>:

    1.    On or about March 25, 2018, in the Middle District of Florida, did you aid in, assist in, procure, counsel, or advise on the preparation or presentation of a 2017 U.S. Individual Income Tax Return Form 1040 for taxpayer M.A. arising under the Internal Revenue laws?

    2.    Did the 2017 Form 1040 falsely state that the business loss (from Schedule C) was $11,171 and itemized deductions (from Schedule A) were $50,130?

    3.    Did you know that the statement in the 2017 Form 1040 was false?

    4.    Was the false statement material?

    5.    Did you do so with the intent to do something you knew the law forbids?

<u>As to Count Three</u>:

    1.    On or about March 27, 2019, in the Middle District of Florida, did you aid in, assist in, procure, counsel, or advise on the preparation or presentation of a 2018 U.S. Individual Income Tax Return Form 1040 for taxpayer M.A. arising under the Internal Revenue laws?

    2.    Did the 2018 Form 1040 falsely state that the business loss (from Schedule C) was $11,357 and itemized deductions (from Schedule A) were $42,701?

    3.    Did you know that the statement in the 2018 Form 1040 was false?

    4.    Was the false statement material?

    5.    Did you do so with the intent to do something you knew the law forbids?

As to Count Four:

    1.    On or about March 2, 2020, in the Middle District of Florida, did you aid in, assist in, procure, counsel, or advise on the preparation or presentation of a 2019 U.S. Individual Income Tax Return Form 1040 for taxpayer M.A. arising under the Internal Revenue laws?

    2.    Did the 2019 Form 1040 falsely state that the business loss (from Schedule C) was $15,174?

    3.    Did you know that the statement in the 2019 Form 1040 was false?

    4.    Was the false statement material?

    5.    Did you do so with the intent to do something you knew the law forbids?

## FACTUAL BASIS

Beginning at least in or about August 2016, and continuing until at least in or about August 2020, in the Middle District of Florida, the defendant, Jonathan CARRILLO, knowingly and willfully conspired with Emmanuel M. Almonor ("Almonor"), Franklin L. Carter Jr. ("Carter"), Diandre T. Mentor ("Mentor"), Adon O. Hemley ("Hemley"), Isaiah J. Hayes ("Hayes"), Abryle Y. de la Cruz ("Cruz"), Kaylah Dacosta ("Dacosta"), and other individuals to defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful

government functions of the U.S. Internal Revenue Service ("IRS") in the ascertainment, computation, assessment, and collection of federal income taxes. CARRILLO and the other co-conspirators promoted and executed a scheme to unlawfully enrich themselves and others by making false claims to the IRS for tax refunds.

Specifically, CARRILLO and his co-conspirators prepared and filed, and caused to be prepared and filed, false and fraudulent U.S. Individual Income Tax Returns ("Forms 1040"), Schedule A forms, and Schedule C forms. The Schedule A forms falsely claimed, among other items, unreimbursed employee expenses, other taxes, and gifts to charity. The Schedule C forms falsely claimed, among other items, business income, business expenses, and business losses. The falsely claimed items in turn falsely reduced the taxpayers' stated income and enabled them to receive increased refunds to which they were not entitled. Because of the excessive tax refunds the members of the conspiracy obtained for taxpayers, they were able to charge high fees to the taxpayers that unjustly enriched the members of the conspiracy.

Between about August 2016 and continuing through about August 2020, CARRILLO worked for a tax preparation company that he owned and operated with Almonor and Carter named Neighborhood Advance Tax, LLC ("NAT"). During this time, CARRILLO, Almonor, Carter, Mentor, and other conspirators held periodic training sessions at which they taught NAT employees how to prepare fraudulent tax returns. Specifically, these trainings taught NAT employees to falsify

items on Schedule A and Schedule C forms in order to maximize each taxpayer's return. The trainings taught NAT employees that by obtaining higher returns for taxpayers, they could then charge higher fees of up to $999 per return, of which fees CARRILLO and other NAT tax preparers received a set percentage. The trainings further instructed NAT employees to, among other things, intentionally use non-even numbers on the tax returns when falsifying amounts so that the claimed amounts appeared more legitimate.

    CARRILLO began owning and operating NAT in 2016, and he began preparing tax returns for NAT around that time. While working at NAT, CARRILLO falsified information in Schedule A and Schedule C forms for dozens of tax returns to fraudulently maximize taxpayers' refunds. Additionally, as an owner, CARRILLO trained employees to prepare false tax returns for clients and oversaw the daily operations of NAT. The total tax loss for which CARRILLO was responsible while he was working for NAT was $10,508,753.

    Some of the fraudulent tax returns that CARRILLO filed while working for NAT were the following:

| Date Filed | Taxpayer | Tax Year and Form | Amount of Schedule A Itemized Deductions and/or Schedule C Losses Reported | Tax Loss to IRS Resulting from Return |
|---|---|---|---|---|
| 3/25/2018 | M.A. | 2017 Form 1040 | $50,130 (Sch. A) $11,171 (Sch. C) | $5,140 |
| 3/27/2019 | M.A. | 2018 Form 1040 | $42,701 (Sch. A) $11,357 (Sch. C) | $4,567 |
| 3/2/2020 | M.A. | 2019 Form 1040 | $15,174 (Sch. C) | $6,431 |

As to the 2017 Form 1040 prepared by CARRILLO for M.A. (as charged in Count Two of the Indictment), it contained fraudulent Schedule C business loss in the amount of $11,171 and fraudulent Schedule A itemized deductions in the amount of $50,130. However, M.A. did not provide CARRILO with the income or expenses reported on the Schedule C, including an income of $501 or expenses of $11,672. M.A. also did not have expenses reported on the Schedule A, including $50,000 in unreimbursed employee expenses, nor did M.A. tell CARRILLO that he did. M.A.'s refund in 2017 was $4,569, and CARRILLO is listed as the tax preparer on the 2017 Form 1040. CARRILLO similarly falsified M.A.'s 2018 Form 1040 by including false Schedules A and C and M.A.'s 2019 Form 1040 by including a false Schedule C.

Then, in 2021 after Almonor left NAT, CARRILLO and Carter decided to close NAT to start Taxmates ("TM") with Cruz. Most of the TM offices were located in prior NAT offices. While working for TM, CARRILLO continued to

prepare and file fraudulent tax returns on taxpayers' behalf. CARRILLO also trained and caused other TM employees to prepare and file fraudulent tax returns on taxpayers' behalf, which included falsified information in Schedule C forms. The total tax loss for which CARRILLO was responsible while he worked for TM was $1,661,313.

In sum, the total tax loss for which CARRILLO is responsible, including both the NAT conspiracy and the TM relevant conduct, is $12,170,066.

The above is merely a summary of some of the events, some of the persons involved, and other information relating to this case. It does not include, nor is it intended to include, all the events, persons involved, or other information relating to this case.

                Respectfully submitted,

                GREGORY W. KEHOE
                United States Attorney

By:  */s/ Sarah Megan Testerman*
      Sarah Megan Testerman
      Assistant United States Attorney
      Florida Bar No. 0124884
      400 W. Washington Street, Suite 3100
      Orlando, Florida 32801
      Telephone: (407) 648-7500
      Facsimile: (407) 648-7643
      E-mail: megan.testerman@usdoj.gov

U.S. v. Jonathan Carrillo              Case No. 6:24-cr-91-WWB-UAB

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 30, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

    Brice Aikens
    Jason Reid
    Attorneys for Defendant

    */s/ Sarah Megan Testerman*
    Sarah Megan Testerman
    Assistant United States Attorney
    Florida Bar No. 0124884
    400 W. Washington Street, Suite 3100
    Orlando, Florida 32801
    Telephone:   (407) 648-7500
    Facsimile:    (407) 648-7643
    E-mail: megan.testerman@usdoj.gov